UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR CALZADILLAS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE WONDERFUL COMPANY, LLC, and DOES 1–25,<br><br>Defendants. | No. 1:19-cv-00172-DAD-JLT<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR LIMITED DISCOVERY AND HOLDING DEFENDANT'S MOTION TO COMPEL ARBITRATION IN ABEYANCE<br><br>(Doc. Nos. 7, 11) |

This matter is before the court on defendant The Wonderful Company's ("Wonderful") April 5, 2019 motion to compel arbitration and to stay or dismiss this action. (Doc. No. 7.) Soon after that motion was filed, plaintiff Salvador Calzadillas filed an *ex parte* application to continue the hearing date, contending that resolution of defendant's motion required discovery and time to conduct that discovery. (Doc. No. 11.) A hearing on both the motion to compel arbitration and the *ex parte* application was held on May 7, 2019. Attorney Eric Kingsley appeared on behalf of plaintiff and the putative class members (hereinafter "plaintiffs"), and attorney Lisa A. Stilson appeared on behalf of defendant. Having considered the parties' briefing and heard from counsel, and for the reasons that follow, plaintiffs' *ex parte* application for discovery will be granted, and defendant's motion to compel arbitration and to stay or dismiss this action will be held in abeyance pending limited discovery as discussed below.

1

**BACKGROUND**

Plaintiffs commenced this action by filing a class action complaint on February 7, 2019. In that complaint, plaintiffs allege as follows. Plaintiffs are seasonal agricultural workers within the meaning of the Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1802(10). (Doc. No. 1 ("Compl.") at ¶ 10.) Plaintiffs are, and have been throughout the relevant period, non-exempt employees within the meaning of California Labor Code § 500 *et seq.* and the rules and regulations of California Industrial Welfare Commission Wage Order No. 14-2001 ("IWC Wage Order 14"). (*Id.* at ¶ 22.) Defendant is the world's largest grower of tree nuts and America's largest citrus grower. (*Id.* at ¶ 13.) Plaintiffs are employed to work in defendant's fields, and are either employed directly or through various Farm Labor Contractors ("FLCs"). (*Id.* at ¶¶ 4, 15.)

Under the parties' working arrangement, defendant is required to pay plaintiffs their agreed-upon wages for all hours worked, to pay workers for required rest periods, to provide meal periods, and to abide in all respects with IWC Wage Order 14. (*Id.* at 29.) The complaint alleges, however, that plaintiffs have not been compensated by defendant for all time worked. (*Id.* at ¶ 30.) Specifically, it alleges that plaintiffs work on a piece-rate basis, picking mandarins in the morning. (*Id.* at ¶ 32.) After this "first pick," workers then switch to non-piece rate work in the late morning or afternoon, doing work such as picking up fruit off the ground, doing a second or third pass through, or picking "la china," but workers are not compensated for this work. (*Id.*) Instead, defendants use the earlier piece-rate earnings as a credit to satisfy minimum wage obligations in violation of California law and/or fail to pay workers for this non-piece-rate work. (*Id.*) Plaintiffs also are sometimes compensated on a "per bin" basis and paid a specific rate per bin, but they often do not get credit for all the bins they pick, thus depriving workers of wages earned. (*Id.* at ¶ 33.) In addition, plaintiffs are scheduled to report to work at a specific time, but upon doing so are frequently told to wait before they can begin harvesting because the citrus trees are wet. (*Id.* at ¶ 34.) This waiting time is neither recorded nor are the workers paid for that waiting time by defendant. (*Id.*) Plaintiffs also do not regularly receive rest breaks as required by California law, nor are they compensated for those rest breaks. (*Id.* at ¶ 37.) The complaint further alleges that by words, conduct, practice, agreement, or custom and usage, defendant

agreed to provide plaintiffs with all necessary tools and equipment, yet during the relevant period, plaintiffs were required to provide their own tools, including pruning shears, picking clippers, cloth sacks, protective gloves, and similar items. (*Id.* at ¶ 38–39.) Plaintiffs have not been reimbursed for the cost of purchasing these items. (*Id.* at ¶ 40.) As part of their employment, plaintiffs were required to travel between fields to perform work tasks, which required plaintiffs to use their own vehicles because defendants did not provide transportation. (*Id.*) Defendants failed to reimburse plaintiffs for use of their vehicle. (*Id.* at ¶ 41.) In addition, this travel time between fields was not recorded by defendants and was not compensated. (*Id.* at ¶ 42.) Defendant also failed to provide plaintiff with meal periods as required under California law and failed to issue itemized wage statements accurately reflecting all of the hours and rates worked by plaintiffs. (*Id.* at ¶ 43–44.)

Based on these allegations, plaintiffs assert a total of eleven causes of action, alleging violations of both state and federal law. (*Id.* at ¶¶ 58–94.) As noted, on April 5, 2019, defendant moved to compel arbitration and to stay or dismiss this action. (Doc. No. 7.) As also noted, on April 17, 2019, plaintiff filed an *ex parte* application for an order permitting plaintiff to conduct discovery and an order continuing the hearing date on defendant's motion. (Doc. No. 11.) On April 23, 2019, plaintiff filed an opposition to defendant's motion. (Doc. No. 12.)

## LEGAL STANDARD

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In deciding a motion to compel arbitration, the "court's role under the Act . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985). As such, "'any doubts

3

concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 at 24–25 (1983)). "Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982)). Therefore, an arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Courts may not apply traditional contractual defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 344 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)).

## ANALYSIS

To be clear, there are effectively two separate motions now before the court. The first is defendant's motion to compel arbitration, in which defendant contends that a valid arbitration agreement exists that precludes resolution of this dispute in federal court. (Doc. No. 7.) Second is plaintiff's *ex parte* application, wherein plaintiff seeks a continuance of the hearing on defendant's motion in order to conduct discovery to determine whether the arbitration agreement is valid and enforceable. (Doc. No. 11.) By minute order, the court has already denied plaintiff's application to the extent it requests a continuance of the hearing on defendant's motion. (Doc. No. 13.) However, the issue of whether plaintiff is entitled to discovery in connection with defendant's motion remains to be decided. Because the issues raised in each motion are intertwined, the court will address them simultaneously.

/////

4

**A.      Whether This Court May Resolve the Question of Arbitrability**

The first issue is whether this court may properly decide the threshold question of arbitrability. Defendant argues the question of whether this dispute must be resolved through arbitration must itself be resolved by an arbitrator, rather than by this court. (Doc. No. 7-1 at 11–13.)

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Resolution of these issues "is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (internal quotation marks and brackets omitted). Thus, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is *clear and unmistakable evidence* that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (emphasis added) (internal quotation marks and brackets omitted); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013). As the Supreme Court has explained:

> the law treats silence or ambiguity about the question "*who* (primarily) should decide arbitrability" differently from the way it treats silence or ambiguity about the question "*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement"—for in respect to this latter question the law reverses the presumption.

*First Options of Chicago*, 514 U.S. 944–45.

Defendant's argument that the question of arbitrability must be decided by an arbitrator is based on the language contained in paragraph 3 of the "Mutual Agreement to Arbitrate Disputes" (the "Agreement") signed by named plaintiff Calzadillas and a representative of Lexus FLC. (Doc. No. 7-2 at 4–5.) Defendant contends that this paragraph "incorporat[es] by reference the JAMS Rules into the Arbitration Agreement." (Doc. No. 7-1 at 11.) JAMS Rule 11(b), in turn, provides that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the

5

Arbitrator." (Doc. No. 7-3 at 9.) The court acknowledges this point but finds that it does not necessarily resolve the issue. While the Ninth Circuit in *Brennan* held that incorporation of arbitration rules into an arbitration agreement constitutes "clear and unmistakable" evidence of the parties' intent to submit the question of arbitrability to an arbitrator, it did so specifically in a context involving sophisticated parties and limited its holding to that context. The Ninth Circuit has repeatedly declined to resolve the question of whether that same rule also applies to unsophisticated parties to an arbitration agreement. *See Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1062 (9th Cir. 2018) ("As in *Brennan* itself, we need not decide whether the *Brennan* rule applies when one or more party is unsophisticated."); *Brennan*, 796 F.3d 1125 at ("[W]e limit our holding to the facts of the present case, which . . . involve an arbitration agreement 'between sophisticated parties.'"); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1075 (9th Cir. 2013) ("We hold that as long as an arbitration agreement is between sophisticated parties to commercial contracts, those parties shall be expected to understand that incorporation of the [arbitration] rules delegates questions of arbitrability to the arbitrator.").

The parties have provided no briefing on this issue, either with respect to the legal issue of whether the rule in *Brennan* applies to unsophisticated parties or with respect to the factual issue of whether plaintiff can properly be considered unsophisticated. District courts in the Ninth Circuit are presently split on the legal question: some district courts have conducted inquiries into the sophistication of the parties to the agreement, while others have not. *Compare, e.g.*, *Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1156 (C.D. Cal. 2018); *DeVries v. Experian Info. Sols., Inc.*, No. 16-CV-02953-WHO, 2017 WL 733096, at \*10 (N.D. Cal. Feb. 24, 2017); *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at \*3 (N.D. Cal. Nov. 14, 2016) (collecting cases and concluding that "incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party"); *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) ("[A]n inquiry about whether the parties clearly and unmistakably delegated arbitrability by incorporation should first consider the position of those parties."), *with, e.g.*, *Razzaghi v. UnitedHealth Grp.*, No. SACV 18-01223 AG (JDEx), 2018 WL 7824552, at \*2 (C.D. Cal. Sept.

17, 2018) ("This Court agrees with those cases deciding that unsophisticated parties can agree to contracts that include terms showing a 'clear and unmistakable' intent to delegate arbitrability issues to an arbitrator."); *Hernandez v. United HealthCare Servs., Inc.*, No. SACV 18-0420-DOC (KESx), 2018 WL 7458649, at *5 (C.D. Cal. July 26, 2018); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017); *Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29, 2017), *motion to certify appeal denied*, 2018 WL 934875 (N.D. Cal. Feb. 16, 2018).

Having reviewed all of these decisions, the court is persuaded by those cases permitting an inquiry into the level of sophistication of the parties before ruling that incorporation of arbitration rules clearly and unmistakably delegates the issue of arbitrability to an arbitrator. As stated, the strong presumption is that questions of arbitrability are to be resolved by courts. The court is therefore reluctant to embrace a rule that would result in expanding the authority of arbitrators to resolve such questions. In addition, a decision by the California Court of Appeal has persuasively reasoned that as a matter of common sense, the frequently esoteric terms of an arbitration agreement—and that agreement's incorporation by reference of additional rules—are rarely clear and unmistakable:

> the reference to AAA rules does not give an employee, confronted with an agreement she is asked to sign in order to obtain or keep employment, much of a clue that she is giving up her usual right to have the court decide whether the arbitration provision is enforceable. Assuming that an employee reads the arbitration provision in the proposed agreement, notes that disputes will be resolved by arbitration according to AAA rules, and even has the wherewithal and diligence to track down those rules, examine them, and focus on the particular rule to which appellants now point, the rule merely states that the arbitrator shall have "the power" to determine issues of its own jurisdiction, including the existence, scope and validity of the arbitration agreement. This tells the reader almost nothing, since a court also has power to decide such issues, and nothing in the AAA rules states that the AAA arbitrator, as opposed to the court, *shall* determine those threshold issues, or has *exclusive* authority to do so, particularly if litigation has already been commenced.

*Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (2012); *see also First Options of Chicago*, 514 U.S. at 945 (noting that the question of who will decide the question of arbitrability "is rather arcane," because of which "[a] party often might not focus upon that question or upon

7

the significance of having arbitrators decide the scope of their own powers"); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *13 (N.D. Cal. June 25, 2014) (holding, in a case decided prior to *Brennan*, that an arbitration agreement's incorporation by reference of separate arbitration rules did not constitute clear and unmistakable evidence of the parties' intent to arbitrate arbitrability), *aff'd on other grounds*, 840 F.3d 1016 (9th Cir. 2016).

The facts of this case amply demonstrate the wisdom of this approach. Plaintiff Calzadillas and the putative class members are seasonal agricultural workers who, according to the allegations of the complaint, have performed their employment for less than minimum wage. (Compl. at ¶¶ 4–5.) It is unclear what level of education each has attained, but it is certainly a reasonable assumption that plaintiff and the putative class members are untrained in the practice of law. Defendant, by contrast, is a corporation worth roughly $4 billion, and is the largest grower of tree nuts in the world. (*Id.* at ¶ 13.) Defendant, and other entities associated with it, employs thousands of seasonal agricultural workers in pre-harvest and harvesting operations, and contracts with various FLCs to establish employment relationships with each of them. (*Id.* at ¶¶ 4, 21.) On these facts, the court has no difficulty concluding that plaintiff and the putative class members are "far less sophisticated" than defendant in terms of their understanding of the legal documents at issue here. *Meadows*, 144 F. Supp. 3d at 1078. Defendant has, moreover, conceded that the named plaintiff in this case is unsophisticated for purposes of this motion.

Accordingly, because the court finds that the issue of arbitrability was not clearly and unmistakably delegated to the arbitrator, the court proceeds to consider plaintiffs' remaining arguments opposing arbitration.

**B.      Whether Defendant Possesses Standing to Enforce the Agreement**

Next, plaintiffs oppose the motion to compel arbitration on the ground that defendant is not a signatory to the Agreement. (Doc. No. 12 at 12–17.) As such, plaintiffs argue that defendant lacks standing to enforce it.

"General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). In particular, "a litigant who is not a party to an arbitration

8

agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Accordingly, and in the absence of any suggestion by the parties to the contrary, the court will examine California law to determine whether defendant can enforce the Agreement. Plaintiffs raise two arguments with respect to why defendant lacks standing to enforce the Agreement, which the court addresses in turn below.

1. Whether Defendant is a Third-Party Beneficiary

First, the court addresses whether defendant, although a nonsignatory to the Agreement, is nonetheless an intended third-party beneficiary. Defendant argues that it is under the plain language of the Agreement. (Doc. No. 7-1 at 15–16.)

"It is well established that a nonsignatory beneficiary of an arbitration clause is entitled to require arbitration." *Harris v. Superior Court*, 188 Cal. App. 3d 475, 478 (1986) (citing *Dryer v. L.A. Rams*, 40 Cal. 3d 406, 418 (1985); *Berman v. Dean Witter & Co., Inc.*, 44 Cal. App. 3d 999 (1975); and *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal. App. 3d 668, 671–72 (1971)). Thus, nonsignatories of a contract may nonetheless enforce its terms if, among other things, they are third party beneficiaries of the contract. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). However, "the mere fact that a contract results in benefits to a third party does not render that party a third party beneficiary; rather, the parties to the contract must have intended the third party to benefit." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir.) (internal quotation marks and brackets omitted), *cert. denied*, ___ U.S. ___, 138 S. Ct. 203 (2017). Under California law,

> The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract.

*Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 891 (2006). "Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract[.]" *Epitech, Inc. v. Kann*, 204 Cal. App. 4th 1365, 1372 (2012). "However, where . . . the issue can be answered

9

by interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the circumstances and negotiations of the parties in making the contract, the issue becomes one of law that we resolve independently." *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225, 1233 (2004). The party seeking to compel arbitration bears the burden of putting forward evidence affirmatively establishing its status as an intended third-party beneficiary. *See Norcia*, 845 F.3d at 1291 ("Samsung does not point to any evidence in the record indicating that Norcia and Verizon Wireless intended the Customer Agreement to benefit Samsung. Therefore, we conclude that Samsung fails to bear its burden of establishing that it was a third-party beneficiary.").

The Agreement in this case states that "Wonderful Citrus Packing LLC . . . and you voluntarily agree that any claim, dispute, or controversy arising out of or relating to your employment with any entity or person retained to perform services for the Company, your alleged employment with the Company, or the separation of employment shall be submitted to final and binding arbitration[.]" (Doc. No. 7-2 at 5.) The Agreement further states that it applies not merely to claims against Wonderful Citrus Packing itself, but also to claims against any of its "partners, affiliated companies, successors, contractors, . . . assigns, owners, directors, officers, shareholders, employees, managers, members, [and] agents." (*Id.*) Defendant contends that it is an affiliated company of Wonderful Citrus Packing, in support of which it submits the declaration of Craig B. Cooper, defendant's senior vice president. (Doc. No. 7-4 ("Cooper Decl.").) In that declaration Mr. Cooper avers that defendant is a privately held company located in Los Angeles, California, of which Wonderful Citrus Packing LLC is an affiliate. (*Id.* at ¶ 2.)

Plaintiffs have not come forward with any competing evidence with respect to the relationship between defendant and Wonderful Citrus Packing LLC. But this is hardly surprising in light of the fact that no discovery has yet taken place in this action. Despite the broad scope of discovery normally permitted in civil actions under the Federal Rules, discovery in connection with a motion to compel arbitration is limited under the FAA. In this regard, the Ninth Circuit has explained that the FAA provides for discovery in connection with a motion to compel arbitration only if "the making of the arbitration agreement . . . be in issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (internal quotation and citation omitted); *Hibler v.*

*BCI Coca–Cola Bottling Co. of L.A.*, No. 11–CV–298 JLS (NLS), 2011 WL 4102224, at *2 (S.D. Cal. Sept. 14, 2011). Thus, here, "'[b]ecause the FAA only permits limited discovery when a motion to compel arbitration is pending, Plaintiffs' discovery must be narrowly tailored to determining whether the arbitration clause is enforceable under California law.'" *Newton v. Clearwire Corp.*, No. 2:11-cv-00783-WBS-DAD, 2011 WL 4458971, at *6 (E.D. Cal. Sept. 23, 2011) (quoting *Laguna v. Coverall N. Am., Inc.*, No. 09CV2131-JM BGS, 2011 WL 3176469, at *7 (S.D. Cal. July 26, 2011)).

Plaintiffs have requested limited discovery in order to determine "whether the arbitration agreement is applicable to Defendant even though it is a nonparty to the agreement." (Doc. No. 11-1 at 4.) As the court understands this request, any such discovery would not go to the merits of plaintiffs' claims, but would instead be limited to the threshold question of whether the Agreement may be enforced by defendant. The court concludes that such limited discovery is permissible. *See Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, No. 15-CV-04718-WHO, 2016 WL 1365946, at *9 (N.D. Cal. Apr. 6, 2016) (permitting discovery on the issue of whether a nonsignatory has standing to enforce an arbitration agreement prior to ruling on the motion to compel arbitration).

Thus, the court will reserve judgment on the issue of whether defendant may enforce the Agreement as an intended third-party beneficiary pending limited discovery on that question.

2. <u>Whether Defendant May Enforce the Agreement Under the Doctrine of Equitable Estoppel</u>

In addition, defendant argues in its motion that it may enforce the Agreement under the doctrine of equitable estoppel. (Doc. No. 7-1 at 17.) In *Kramer*, the Ninth Circuit collected various California cases and concluded that:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or

11

>
> intimately connected with the obligations of the underlying agreement."

*Kramer*, 705 F.3d at 1128–29 (internal quotation marks, brackets, and citations omitted). Notably, and contrary to the position taken by defendant in its briefing, this test is conjunctive, not disjunctive. (*See* Doc. No. 7-1 at 17.) Equitable estoppel only applies when *both* requirements are satisfied, a point confirmed by the California Court of Appeal. *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 219 (2009) ("[A]llegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement.").

The court first examines whether plaintiffs' claims against defendant are "intimately founded in and intertwined with the underlying contract." Here, however, defendant has not provided the court with any contract other than the Agreement itself, which is devoted exclusively to issues concerning arbitration. The causes of action asserted in plaintiffs' complaint make no mention of the Agreement, and the court fails to grasp how those causes of action, which generally allege violations of wage and hour laws, could be "intimately founded in and intertwined with" the Agreement here.

Another district court recently confronted a similar situation. *See Garcia v. NRI USA, LLC*, No. 2:17-cv-08355-ODW-GJS, 2018 WL 3702293 (C.D. Cal. Aug. 1, 2018). In *Garcia*, the plaintiff initiated a class action against both a temporary staffing agency and a warehouse distribution company. *Id.* at *1. Plaintiff entered into a binding arbitration agreement with the staffing agency, but the distribution company was not a party to that agreement. *Id.* Plaintiff was then assigned by the staffing agency to work for the distribution company, which she did for almost three years. *Id.* After plaintiff filed her complaint, both the staffing agency and the distribution company moved to compel arbitration, with the latter arguing that it could enforce the arbitration provision under the doctrine of equitable estoppel despite being a nonsignatory to the agreement. *Id.* The district court disagreed, noting that "the Arbitration Agreement is a two-page document that speaks only to the dispute resolution procedures should a dispute arise between

12

[the staffing agency] and Plaintiff. Plaintiff's claims are not based on, do not require interpretation of, nor are 'intimately connected' with the terms of the Arbitration Agreement." *Id.* at \*5. There, as here, equitable estoppel does not permit a nonsignatory defendant to enforce an arbitration agreement because "[p]laintiffs' claims do not depend on the Agreement's terms." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1231 (9th Cir. 2013). Because the allegations in the complaint "reveal no claim of any violation of any duty, obligation, term or condition imposed by the [Agreement]," *Goldman*, 173 Cal. App. 4th at 230, defendant has failed to demonstrate that equitable estoppel applies.

In sum, the only plausible basis by which defendant may enforce the Agreement is as an intended third-party beneficiary. Because the court finds plaintiff is entitled to limited discovery before that question is resolved, the court will reserve ruling on that point. However, assuming that defendant does possess standing as an intended third-party beneficiary, the court proceeds to consider below plaintiffs' argument that the Agreement should not be enforced because it is both procedurally and substantively unconscionable.

**C. Whether the Agreement is Unconscionable**

Next, plaintiffs attempt to defeat the motion to compel arbitration by arguing that the Agreement is both procedurally and substantively unconscionable. (Doc. No. 12 at 17–21.) Plaintiffs indicated at the hearing on the pending motions that they do not seek discovery with respect to unconscionability. Rather, they contend that unconscionability may be found based on the facts already before the court. The court addresses each of plaintiffs' arguments in turn.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision, known as the "savings clause" of the FAA, "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs.*, 517 U.S. at 687). "Any doubts about the scope of arbitrable issues,

/////

13

including applicable contract defenses, are to be resolved in favor of arbitration." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017).

To establish the defense of unconscionability under California law, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable. *Id.* at 1260 (citing *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)). "The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability . . . [b]ut they need not be present in the same degree." *Sanchez*, 61 Cal. 4th at 910. Courts generally view procedural and substantive unconscionability on a sliding scale, whereby "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

1. <u>Whether the Agreement is Procedurally Unconscionable</u>

The court first addresses whether the relevant agreement is procedurally unconscionable. "The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) ("Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement."). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in no real negotiation," while "[s]urprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922 (internal quotation marks and citation omitted). "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113. "The term contract of adhesion signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to

14

adhere to the contract or reject it." *Id.*; *see also Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 246 (2014) (finding procedural unconscionability in part because the agreement was presented to a potential employee "on a take-it-or-leave-it basis"); *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013) ("It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability.").

In support of plaintiffs' argument that the parties' agreement is procedurally unconscionable, plaintiffs have submitted the declaration of named plaintiff Salvador Calzadillas. (Doc. No. 12-3 ("Calzadillas Decl.").) In it, plaintiff Calzadillas avers that when he began his employment for the 2016 season, he and his coworkers "were given a bunch of documents and told [they] had to sign them if [they] wanted to work at Wonderful." (*Id.* at ¶ 3.) They were further instructed by their foremen "just to sign them because there was no time to read them," and that they "were on work time and had to get to work and were rushed to sign and turn the papers in." (*Id.*) He further states that he does not know what the Agreement means in reference to "JAMS or JAMS Rules," that he was never given a copy of those rules, and that he was never told that a copy of those rules was available to him in Spanish. (*Id.* at ¶ 4.) As an adhesion contract, the Agreement bears all the hallmarks of procedural unconscionability, a point which defense counsel did not dispute at the hearing on the pending motions. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) ("[A] contract is procedurally unconscionable under California law if it is a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.").

2. <u>Whether the Agreement is Substantively Unconscionable</u>

The next question is whether the relevant Agreement is also substantively unconscionable. Plaintiffs argue that the Agreement is substantively unconscionable in two respects: (1) the JAMS Rules, which were incorporated by reference into the Agreement, were not physically attached to it; and (2) the language of the Agreement impermissibly compels arbitration of PAGA claims.

/////

"The substantive element of unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 247 (2016) (internal quotation marks omitted). California courts have applied various tests to determine whether an agreement is substantively unconscionable. These include inquiring whether the terms are "overly harsh," "unduly oppressive," or "so one-sided as to shock the conscience." *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (collecting cases). The California Supreme Court recently clarified, however, that "these formulations, used throughout our case law, all mean the same thing." *Sanchez*, 61 Cal. 4th at 911. At bottom, an agreement is substantively unconscionable where its enforcement would work "a substantial degree of unfairness beyond a simple old-fashioned bad bargain." *Id.*; *see also Serpa*, 215 Cal. App. 4th at 703 (noting that substantive unconscionability may exist where "contractual provisions reallocate risks in an objectively unreasonable or unexpected manner"). "Mutuality is the 'paramount' consideration when assessing substantive unconscionability." *Pokorny*, 601 F.3d at 997 (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004)). Thus, substantive unconscionability "typically is found in the employment context when the arbitration agreement is one-sided in favor of the employer without sufficient justification, for example, when the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration." *Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 177–78 (2015) (internal quotation marks omitted).

As stated, plaintiffs first argue that the agreement is substantively unconscionable because "[d]efendant failed to attach the [JAMS Rules] referenced in the agreement to the actual agreement," because of which "Mr. Calzadillas would be required to go to another source in order to learn the full ramifications of the arbitration agreement." (Doc. No. 12 at 20.) However, whether the failure to attach additional arbitration rules which are incorporated by reference into the arbitration agreement amounts to unconscionability is a procedural question, not a substantive one. *See, e.g.*, *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) ("[T]he failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of *procedural*

unconscionability.") (emphasis added); *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 485 (2011) ("The absence of the AAA (American Arbitration Association) arbitration rules adds a bit to the *procedural* unconscionability.") (emphasis added). The undersigned has already found at least some amount of procedural unconscionability with respect to the Agreement and, as in *Zullo*, the failure to attach the JAMS Rules "adds a bit" to that analysis. *Zullo*, 197 Cal. App. 4th at 485; *see also Carbajal*, 245 Cal. App. 4th at 246 (noting that the failure to attach AAA rules that were incorporated by reference into an agreement "is merely one factor" in concluding that the agreement was procedurally unconscionable). However, the court is aware of no case standing for the proposition that such a failure can constitute both procedural *and* substantive unconscionability.[1]

Plaintiffs next argue that the Agreement is substantively unconscionable because, by its terms, it compels arbitration of representative PAGA claims. (Doc. No. 12 at 21.) Plaintiffs are correct that under California law, "an employment agreement [that] compels the waiver of representative claims under the PAGA . . . is contrary to public policy and unenforceable as a matter of state law." *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 384 (2014). In turn, the Ninth Circuit has held that this rule "does not stand as an obstacle to the accomplishment of the FAA's objectives, and is not preempted [by federal law]." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 427 (9th Cir. 2015). Here, the Agreement states that all claims "must be brought in each party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. The arbitrator may not consolidate more than one person's/entity's claims, and may not otherwise preside over any form of a representative or class proceeding." (Doc. No. 7-2 at 4.) As the court interprets the plain language of the Agreement,

---

[1] In support of the argument that failure to attach the JAMS Rules is substantively unconscionable, plaintiffs cite to the decision in *O'Hare v. Municipal Resource Consultants*, 107 Cal. App. 4th 267, 281–82 (2003). In *O'Hare*, the California Court of Appeal held that an arbitration agreement was substantively unconscionable based in part upon its incorporation of AAA rules. *Id.* However, the court did not rest its ruling on the failure to attach the AAA rules to the contract. Rather, it was the terms of the AAA rules *themselves* that were found substantively unconscionable. *See id.* at 279–280. Here, plaintiffs do not suggest that the contents of the JAMS Rules are substantively unconscionable, only that the failure to attach them to the Agreement is unconscionable. *O'Hare* is therefore distinguishable from this case.

17

therefore, it precludes any plaintiff from bringing representative PAGA claims. This violates the California Supreme Court's rule in *Iskanian*, and defendant effectively concedes in its reply brief that such a prohibition is unlawful. (*See* Doc. No. 14 at 11.)

Nonetheless, it does not necessarily follow that the Agreement is substantively unconscionable. "Under California law, 'contracts can be contrary to public policy but not unconscionable and vice versa.'" *Poublon*, 846 F.3d at 1264 (brackets omitted) (quoting *Sonic–Calabasas A, Inc. v. Moreno*, 51 Cal. 4th 659, 686–87, *cert. granted, judgment vacated on other grounds*, 565 U.S. 973 (2011)). Moreover, even if this provision would be substantively unconscionable as applied to representative PAGA claims, the court need not automatically nullify the Agreement. "If a California court concludes that a contract contains one or more unconscionable clause[s], it may: (1) refuse to enforce a contract that was 'unconscionable at the time it was made'; (2) 'enforce the remainder of the contract without the unconscionable clause'; or (3) 'limit the application of any unconscionable clause as to avoid any unconscionable result.'" *Id.* at 1272 (quoting Cal. Civ. Code § 1670.5(a)). In deciding whether to sever an unconscionable provision, the California Supreme Court has instructed that a court should refuse to enforce an agreement in its entirety "only when an agreement is 'permeated' by unconscionability." *Armendariz*, 24 Cal. 4th at 122; *see also Ajamian*, 203 Cal. App. 4th at 802.

Because the court has rejected plaintiffs' argument that the failure to attach the JAMS Rules renders the Agreement substantively unconscionable, the sole basis for finding such unconscionability rests with the arbitrability of the representative PAGA claims. In light of this, the court is reluctant to strike down the Agreement altogether. Where, as here, there is at most one unconscionable provision identified by plaintiffs, the proper remedy is to construe the offending provision so as to avoid any unconscionable result. *See Poublon*, 846 F.3d at 1273 ("California courts have held that a factor weighing against severance exists when 'the agreement contains more than one objectionable term' which 'may indicate a systematic effort to impose arbitration on an employee.'" (quoting *Ontiveros v. DHL Exp. (USA), Inc.*, 164 Cal. App. 4th 494, 515 (2008))); *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1159 (N.D. Cal. 2015) (finding that because "the sole substantively unconscionable element . . . is the PAGA waiver . . . the Court

will sever the PAGA waiver"). The court cannot conclude on the facts of this case that the Agreement is permeated with substantive unconscionability, and accordingly declines plaintiffs' request to strike it down entirely. Instead, the court will limit is application with respect to any representative PAGA claims plaintiffs ultimately wish to bring.[2]

In sum, the court finds no basis to void the Agreement on the basis of unconscionability.

## CONCLUSION

For the reasons set forth above,

1. Plaintiffs' *ex parte* application to conduct discovery (Doc. No. 11) is granted, as follows:

    a. The parties are permitted to conduct discovery limited to that necessary to address the question of whether defendant is an intended third-party beneficiary of the Agreement[3];

    b. This limited discovery shall be completed within 60 days of the service of this order unless the assigned magistrate judge finds good cause to extend that time period;

    c. No later than twenty-one days after the close of discovery, plaintiffs are permitted to file a supplemental brief, no more than fifteen pages in length, opposing defendant's motion to compel arbitration; and

    d. No later than fourteen days thereafter, defendant may file a response, no more than fifteen pages in length;

/////

---

[2] Plaintiffs have not yet alleged any PAGA claims, but at the hearing on the pending motions plaintiffs' counsel represented to the court that they intend to do so. In that event, the parties should be prepared to advise the court how they intend to proceed with those claims, and specifically whether the court should bifurcate these proceedings. *See Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054, 1067–68 (N.D. Cal. 2015), *aff'd*, 677 Fed. App'x 359 (9th Cir. 2017).

[3] Any disputes between the parties with respect to scope of discovery permitted by this order, as with all discovery disputes, shall be resolved by the assigned magistrate judge in the first instance. *See* Local Rule 302(c)(1).

19

2. Defendant's motion to compel arbitration (Doc. No. 7) will be held in abeyance pending the limited discovery contemplated by this order and the filing of the supplemental briefing; and

3. Following receipt of this supplemental briefing, the court will advise the parties whether further oral argument will be heard before taking the motion to compel arbitration under submission.

IT IS SO ORDERED.

Dated: **June 3, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE